**Aubrey BAKER, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2006–CA–000148–MR.

Court of Appeals of Kentucky.

June 22, 2007.

Daniel Sherman, Greenville, KY, for appellant.

Gregory D. Stumbo, Attorney General, David W. Barr, Assistant Attorney General, Frankfort, KY, for appellee.

Before THOMPSON and VANMETER, Judges; PAISLEY,[1] Senior Judge.

## OPINION

PAISLEY, Senior Judge.

Aubrey Baker appeals from a judgment of the Webster Circuit Court entered on December 1, 2005. Following a jury trial at which he was not represented by an attorney, Baker was found guilty of flagrant non-support and sentenced to serve three and one-half years in prison. Baker argues that his conviction should be reversed because, although he was indigent, he was denied the right to counsel when the court refused to appoint a public defender to represent him. We agree, and accordingly we reverse and remand.

Baker was arrested and charged with non-support in October of 2004. With his bond set at $10,000, he remained in custody and was subsequently indicted for flagrant non-support, a class D felony. At his arraignment on January 7, 2005, he appeared without an attorney, but informed the court that an attorney named Dion Moorman was representing him. He remained in custody.

On February 3, 2005, Moorman appeared with Baker at his pretrial conference, and tendered to the court his motion to withdraw as counsel of record. Moorman asked the court to appoint an attorney for Baker on the grounds that he had been incarcerated for several months. In response to the court's questioning, Baker stated that he was unemployed and that he owned a truck with an approximate value of $1600.00. Baker completed an affidavit of indigency and was informed by the court that a public defender would be appointed to represent him. The court also allowed Baker to post five percent of his bond, thereby securing his release.

Baker was thereafter represented by public defender Jason File at hearings held on April 7 and June 24, 2005. At the latter conference, File explained to the court that Baker was employed and was in fact going to "head back to work." No inquiry was made as to whether Baker continued to qualify for representation by the public defender.

On August 4, 2005, Baker failed to appear for a scheduled hearing and a bench warrant was issued for his arrest. He appeared, represented by File, at a pretrial conference held on September 16, 2005. File stated that Baker had a related, pending civil case regarding child support and child visitation issues. He explained that Baker had difficulty retaining counsel in that case, but that Baker

**1.** Senior Judge Lewis G. Paisley sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

planned to retain attorney Mark Wells to represent him. He said that Baker had also asked Wells to review his criminal case to determine whether he would be willing to represent him in that proceeding as well. File then moved to withdraw his representation because Baker was not willing to accept his advice regarding pre-trial diversion. He stated:

Mr. Baker is not willing to accept my advice regarding the felony pre-trial diversion. He wants another attorney to review his criminal case. I have no other option than to ask the court to set this again for jury trial and to ask the court to withdraw me as counsel of record.

The court granted File's motion to withdraw and stated that if Baker "could afford to obtain an attorney for his civil case, he could afford to obtain an attorney for his criminal case instead of having the public defenders' office represent him." Baker then told the court that he had just secured a job at Bristol Myers. He also explained that he had been working since May or June. (It is unclear from the record whether Baker had been working at Bristol Myers since May or June, or if the Bristol Myers job was a new one.) Baker did state that he was guaranteed to have a full-time job at Bristol Myers in another week. Although the court made no further inquiry about the specifics of Baker's financial situation, the court stated that it was going to vacate the public defender appointment.

The court also expressed its disapproval that Baker had been employed since May or June, but had not reported his income to the Office of Child Support, commenting that it appeared that Baker was "totally non-compliant as far as child support is concerned." The court also stated, however, that if Baker had adequate proof of employment, the court would consider

work release, but that in the meantime, the bench warrant would be executed. Baker was returned to custody.

On October 6, 2005, a brief conference was held where an attorney named Nicole represented Baker. According to the appellant's brief, Nicole was employed by the public defender's office. It is unclear what Baker's situation as far as representation was at this point, although he was still incarcerated.

On November 3, 2005, two weeks before the trial, another pretrial conference was held at which the court asked Baker whether he had obtained an attorney. He responded that he did not have one and needed one. The court explained that it had previously vacated the public defender appointment because it was discovered that Baker had been working. Baker explained that he had been "locked up" since [September] 16, but that his job was still available if he could get work release. The court responded that "even when you were working you didn't pay child support. It doesn't do us any good for you to have a job if you won't pay child support." The court reiterated that "You can represent yourself or you have to have an attorney." Baker said, "If I can work, maybe I can afford one." The court stated that it would consider work release and told Baker to get his employer to verify that the job offer remained open. The court refused to vacate the trial date of November 18, and told Baker that his attorney had to contact the Commonwealth's Attorney by November 11.

The trial was held on November 18, 2005, as scheduled. Baker was unrepresented by counsel. He again told the court that he could not afford a lawyer, and that he needed the court to appoint one. The court explained that it had already addressed the issue, that his request had been denied and it would be denied

again. Baker represented himself at trial and was found guilty.

At sentencing, he was represented by private counsel who moved the court to set aside the jury verdict, arguing that Baker's right to counsel had been violated. The court stated, "I know Mr. Baker has been incarcerated—but if he could now obtain counsel for sentencing, he could have just as easily obtained counsel prior to trial." Baker's attorney then explained that he had been retained just the day before by Baker's sister. The court replied "The sister could have obtained him an attorney prior to trial if that's the case." We note that there is no basis for the court's apparent conclusion that Baker could be denied appointed counsel because a relative or some other third party could afford to hire an attorney for him. The issue is whether or not Baker is indigent, not the financial circumstances of his friends or family members. Baker was sentenced to serve three and one-half years in the penitentiary. On January 6, 2006, the court granted his motion for bail pending an appeal.

■ On appeal, Baker argues that his fundamental right to counsel under the Sixth Amendment was violated when the trial court allowed his public defender to withdraw and refused to reappoint a public defender to represent him at trial.

In *Tinsley v. Commonwealth,* 185 S.W.3d 668 (Ky.App.2006), this Court recently summarized the standards governing the determination of indigency for the purpose of appointment of counsel. The opinion outlined the two-step process that must be followed if a defendant raises the issue of indigency. First, "a hearing must be held . . . in accordance with the requirements set forth in KRS Chapter 31, and the court must enter findings at the conclusion thereof." *Tinsley,* 185 S.W.3d at 675.

KRS 31.100(3)(a) defines a needy person or indigent person as follows:

A person eighteen (18) years of age or older or emancipated minor under the age of eighteen (18) who, at the time his need is determined, is unable to provide for the payment of an attorney and all other necessary expenses of representation[.]

KRS 31.120(2) provides in pertinent part that

In determining whether a person is a needy person and in determining the extent of his . . . inability to pay, the court concerned shall consider such factors as:

(a) Income;

(b) Source of income;

(c) Property owned;

(d) Number of motor vehicles owned and in working condition;

(e) Other assets;

(f) Outstanding obligations;

(g) The number and ages of his or her dependents;

(h) The poverty level income guidelines compiled and published by the United States Department of Labor;

(i) Complexity of the case;

(j) Amount a private attorney charges for similar services;

(k) Amount of time an attorney would reasonably spend on the case; and

(*l*) Payment of money bail, other than a property bond of another, whether deposited by the person or another, to secure the person's release from confinement on the present charge of which he or she stands accused or convicted; and

(m) Any other circumstances presented to the court relevant to financial status.

Release on bail, or any other method of release provided in KRS Chapter 431,

shall not necessarily prevent him from being a needy person. In each case, the person ... subject to the penalties for perjury, shall certify by affidavit of indigency which shall be compiled by the pretrial release officer, as provided under KRS Chapter 431 and Supreme Court Rules or orders promulgated pursuant thereto, the material factors relating to his ability to pay in the form the Supreme Court prescribes.

In Baker's case, the court did not hold a formal hearing, nor did it enter written findings to support its decision to vacate his public defender appointment. The decision appears to have been based on information elicited at the September 16, 2005, pretrial conference: namely, that Baker was planning to retain an attorney to handle his civil case whom he was hoping would also review his criminal case, and that he had been employed since May or June. The court made no inquiries as to the amount of Baker's income, nor is there any indication in the record that the court considered any of the other factors listed in KRS 31.120(2). The court also ordered the execution of the bench warrant, thereby making it impossible for Baker to continue his employment without securing work release, which was not granted.

■ As we stated in *Tinsley,*

It is now elementary that an indigent criminal defendant is entitled to appointment of counsel in any proceeding in which he could be sentenced to a term of imprisonment. We note that this right was recognized in Kentucky well before *Gideon [v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799(1963) ]. It is the duty of a trial court to assign counsel to defend an accused when the accused makes such a request and a necessary showing in support thereof[.]

185 S.W.3d at 671–72 (internal citations and punctuation omitted).

As Mr. Justice Black stated in *Gideon:*

The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours. From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him.

372 U.S. 335, 344, 83 S.Ct. 792, 796–797, 9 L.Ed.2d 799.

■ The fact that a criminal defendant is in jail pending trial does not automatically entitle him to appointed counsel. However, trial courts should exercise great caution to insure that an incarcerated individual is not deprived of the right to counsel. In this case, the trial court neither conducted any inquiry nor made any findings indicating what source of funds Baker had access to which would have enabled him to hire an attorney. The fact that Baker may have been able to retain private counsel for the civil action is not dispositive of whether he was entitled to a public defender at his criminal trial. KRS 31.110(3) specifically provides that "[a] needy person's right to a benefit under subsection (1) or (2) of this section is not affected by his having provided a similar benefit at his own expense, or by his having waived it, at an earlier stage."

Furthermore, the determination on September 16, 2005, that Baker was not indigent was insufficient to support a denial of counsel without some further investigation two months later at the pretrial conference

of November 3, 2005. KRS 31.120(1) specifically provides:

> The determination of whether a person covered by KRS 31.110 is a needy person shall be deferred no later than his first appearance in court or in a suit for payment or reimbursement under KRS 31.211, whichever occurs earlier. Thereafter, **the court concerned shall determine, with respect to each step in the proceedings, whether he is a needy person.**

(Emphasis supplied.)

At the November 3, 2005, hearing, when Baker explained that he had been incarcerated and therefore unable to work since the September 16, 2005, hearing, the court should have determined if Baker had any other source of funds to pay for an attorney. There is simply nothing in the record to support the trial court's conclusion that Baker was not indigent simply because he had a job two months before.

▄▄▄ Next, even assuming for the sake of argument that the findings of the trial court were adequate to support its conclusion that Baker was not indigent, the court also failed to comply with the next step of the process as outlined in *Tinsley.* "[I]f the findings do not support indigency, and the defendant persists in not employing counsel, he shall be deemed to have waived counsel, whereupon he is entitled to the protections of *Faretta.*" *Tinsley* at 675. "In Kentucky, a trial court is under an affirmative duty to hold a *Faretta* hearing when an accused attempts to make an absolute or limited waiver of the right to counsel." *Tinsley,* 185 S.W.3d at 674 *citing Hill v. Commonwealth,* 125 S.W.3d 221, 226 (Ky.2004). Under *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45

L.Ed.2d 562 (1975), a trial court has three duties when a criminal defendant wishes to waive his right to counsel:

> First, the trial court must conduct a hearing in which the defendant testifies as to whether the waiver is voluntary, knowing, and intelligent. Second, the trial court must warn the defendant in the hearing of the benefits relinquished and the perils arising from the waiver of counsel. Finally, the trial court must make a finding on the record that the waiver is voluntary, knowing, and intelligent.

*Tinsley,* 185 S.W.3d at 674, *citing Hill,* 125 S.W.3d at 226.

There is no indication in the record that a *Faretta*-type hearing was conducted to determine whether Baker's waiver of counsel was valid. Baker's conviction must therefore be reversed because "[t]he failure to comply with these [*Faretta* ] requirements constitutes 'structural' error to which harmless error analysis is inapplicable." *Tinsley,* 185 S.W.3d at 674–675, *citing Hill,* 125 S.W.3d at 228.

Under these circumstances, Baker is clearly entitled to a new trial. The judgment of the Webster Circuit Court is reversed, and this matter is remanded to the circuit court for further proceedings consistent with this opinion.

ALL CONCUR.